# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17-cv-174-FDW

| | |
|---|---|
| **KENNETH ANTHONY BATTLE,** | ) |
| **Plaintiff,** | ) |
| vs. | ) **ORDER** |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,** | ) |
| **Defendants.** | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 9).

## I.  BACKGROUND

*Pro se* incarcerated Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to incidents that allegedly occurred at the Avery-Mitchell Correctional Institution.[1] He names the following as Defendants in their official and individual capacities: the North Carolina Department of Public Safety – Prisons ("NC DPS"); and the following employees at the Avery-Mitchell C.I.: Assistant Superintendent of Custody Gegory Taylor, Assistant Superintendent of Programs Jason Penland, Assistant Unit Manager Mark Geouge, Physician Assistant Keith D'Amico, Officers Bailey, Clark, Hensley, and Porshia, Captains Pittman and Watson, Sergeant Tate, and Lieutenant Quintero.

---

[1] Although Plaintiff's address of record is the Tabor Correctional Institution in Tabor City, North Carolina, the NC DPS website indicates that he currently resides at the Alexander Correctional Institution Taylorsville, North Carolina. See https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view. He will be mailed a copy of this Order at his address of record as well as at the Alexander C.I. in an abundance of caution. Plaintiff is reminded that it is his responsibility to notify the Court of any change of address by filing a formal Notice in this case.

1

Construing the Compliant liberally and accepting the allegations as true, Plaintiff suffers from a severe latex allergy for which he had a Medical "490" card at the time of the incidents at issue. Dr. Umesie and P.A. Hendricks at Harnett Correctional Institution had conducted a latex test on Plaintiff that came back negative but chose to err on the side of caution, prescribed Triamcinolone Acet 0.1%, and recommended that Plaintiff see a dermatologist due to his severe skin reactions when he contacts latex. Plaintiff was taken to Boone Dermatology on November 24, 2015, and the consulting dermatologist concluded that Plaintiff is likely allergic to latex, recommended that he not to come in direct contact with it, and recommended the same medication that Umesie and Hendricks had prescribed.

On October 25, 2015, at Avery-Mitchell C.I., Plaintiff went to get his special diet meal at lunchtime and noticed that every inmate on the serving line was wearing latex gloves. Plaintiff explained to the officer over the serving line that he is allergic to latex and displayed his ID Card bearing a warning placed by Medical. Officer Porshia came over and began harassing Plaintiff, stating "look guy, are you going to eat or what?" (Doc. No. 1 at 10). Plaintiff said "yes," but that he could not eat food that had been handled with latex. Plaintiff showed his card to Officers Hensley and Clark as Plaintiff began showing the first stages of his allergic reaction to latex on his arms and neck. He also told them that he had a "Medical 490 … that states [he] has a severe latex allergy that will ca[u]se severe skin reactions." (Doc. No. 1 at 10). Plaintiff told Officer Hensley "this stuff will kill me!" (Doc. No. 1 at 10). Officer Clark made a "sadistic and disparaging" comment that "when you die, fill out a grievance." (Doc. No. 1 at 10). Plaintiff asked to see a Captain or the Officer in Charge ("OIC"), and Officer Clark told Plaintiff to go tell the sergeant on duty that he wanted to see the captain. Plaintiff complied.

At dinnertime that same day, Plaintiff approached Captain Pittman about the lunchtime

incident with Officers Clark, Porshia, and Hensley, including Clark's "sadistic" comment. (Doc. No. 1 at 10). Pittman said he did not believe that Clark made that comment. When Plaintiff said there were witnesses, Pittman said that an inmate's word means "nothing" to him and told Plaintiff to go back to his unit. (Doc. No. 1 at 11). Pittman did not investigate these issues.

After this incident, Medical consistently began giving Plaintiff appointments with P.A. D'Amico, who attempted to deny Plaintiff's latex allergy. D'Amico chose to seek his own findings by taping latex to Plaintiff's arm and ordering Plaintiff to walk around with it for hours. It caused Plaintiff great pain and made him sick, requiring him to file a medical emergency. (Doc. No. at 12). On November 18, 2015, D'Amico discontinued the Triamcinolone Acet 0.1% that had been prescribed by Dr. Umesie and P.A. Henricks, and that was also recommended by the dermatologist.

Assistant Unit Manger Geouge processed Plaintiff's grievances and told him that Defendant Penland said witness statements cannot be submitted with grievances. (Doc. No. 1 at 12). Plaintiff responded that it violated NC DPS policy regarding administrative remedies to reject witness statements and Geouge said he would have to look into the matter. As investigator of the Step-1 grievance, Geouge had full knowledge of the witness statements and identities of the witnesses willing to testify for Plaintiff. However, he disregarded this and failed to interview the witnesses or obtain any statements from them. If he would have done so, he would have found that D'Amico discontinued his medication needed for allergy on November 18, 2015. Geouge failed to adequately and truthfully investigate Plaitniff's allegations against staff.

Assistant Superintendent of Programs, Jason Penland, investigated Step-2 of the grievances. He refused to adequately and truthfully investigate Plaintiff's complaints and investigated them with bias. He already saw and read the grievance before it was assigned to him and formed and opinion about it. This "clearly shows the fallacious and deceptive tactics he and

3

Mr. Geouge has taken, in their efforts to hide the truth and protect their fellow officers and staff." (Doc. No. 1 at 14).

Plaintiff spoke with Captain Reel about the incident and the officers' conduct, and she told him to file a grievance. Plaintiff also spoke to Captain Watson of the internal affairs division. Still nothing happened. Plaintiff sent Captain Watson copies of the witness statements because Captain Pittman's officers (Clark, Porshia, and Hensley) submitted false statements in response to the grievance. This shows the incident is being swept under the rug and officers are being protected. Plaintiff spoke to Taylor about the incident but he refused to step in and do anything to stop it or correct the actions of officers and staff. Taylor told Plaintiff to "stay out of the situation" but would not tell him "by who or why." (Doc. No. 1 at 15).

Defendants Porshia and Hensley retaliated against Plaintiff on November 22, 20155, by searching him and going through his belongings while wearing latex gloves, while they both had full knowledge of Plaintiff's latex allergy. Plaintiff told both officers again that he is allergic to latex, showed them the "490" card, and offered them non-latex gloves but they refused to wear them.

The retaliation continued on January 17, 2016, when Defendants Geouge, Taylor, and Bailey searched Plaintiff's property. A lot of property and food were taken or destroyed. The officers did not fill out a property form noting the disposition of Plaintiff's property and failed to conduct a proper inventory.

On May 13, 2016, Plaintiff returned to Avery-Mitchell C.I. where he faced more retaliation when he was denied adequate bedding.[2] Plaintiff's allergy makes him unable to sleep on the plastic

---

[2] Plaintiff fails to explain when or under what circumstances he left Avery-Mitchell C.I.

mattresses that the facility changed over to, and Medical said that Plaintiff's mattress has to be cloth. The facility and supervisors are aware of the latex allergy and bedding situation because Plaintiff was housed at Avery-Mitchell C.I. before. Sgt. Tate, the Unit Supervisor the night of Plaintiff's return, was given Plaintiff's Medical "490" indicating the mattress restriction, but he failed to provide Plaintiff with the appropriate mattress. At around 3:00 am, Tate told Plaintiff there was no mattress for him to sleep on. Plaintiff asked to speak to the OIC, Lt. Quintero, and Tate said "he is aware of the situation," however, Quintero failed to help resolve the problem. (Doc. No. 1 at 16). Plaintiff was given some blankets so he could lie on the bed's bare wire fencing and springs, or on the floor. Plaintiff chose to lie on the bare metal bed which caused "much pain" to his back and arms; he was already on medication for his back due to surgery. This affected him mentally and humiliated him in front of other inmates. It took him several days to feel relief from the back pain.

Avery-Mitchell C.I. and its staff have a history of discrimination against African American inmates with brutality and cruel and unusual punishment. Inmates of color are harassed with hostile abusive verbal or physical conduct more often than white inmates. Officers' behavior and their aggression towards Black inmates should be viewed as hate crimes, criminal charges should be filed. There have been numerous complaints filed with NC DPS and Department of Justice civil rights division but the tyrannical acts of officers and staff at this facility continue.

The Defendants' actions when Plaintiff was searched and touched with latex gloves caused him to have skin reactions. The latex that D'Amico taped to his arm caused scarring and a more severe skin reaction. Plaintiff experienced pain in arms and back from sleeping on a bed without a mattress. He also sustained mental and emotional injury from cruel and unusual punishment and pain and suffering.

5

Plaintiff seeks preliminary and permanent injunction to make NC DPS and Defendants stop their pattern of brutality and harassment and mandate the use of latex gloves; compensatory damages; punitive damages; any additional relief the court deems just, proper, and equitable. He does not seek a jury trial.

## II. PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

A preliminary injunction is an extraordinary remedy that is never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008); Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter, 555 U.S. at 20; Di Biase v. SPX Corp., 872 F.3d 224, 229 (4th Cir. 2017).

A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Plaintiff alleges that the incidents at issue occurred at the Avery-Mitchell C.I., his address of record is at the Tabor C.I., and the NC DPS website indicates that he is presently housed at the Alexander C.I. Because he no longer resides where the alleged incidents occurred and he has not alleged that these conditions are likely to recur, his request for preliminary injunctive relief will be denied as moot.

## III. INITIAL REVIEW STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the

6

Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must

7

articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## IV. DISCUSSION

### (1) Parties

#### a) NC DPS

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Thus, § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989) (holding that a state is not a person within the meaning of § 1983); Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Congress has not imposed § 1983 liability upon states, and the state of North Carolina has done nothing to waive its immunity. Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) (citing McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987)).

Plaintiff's claims against the North Carolina Department of Public Safety are barred by sovereign immunity and are dismissed.

#### b) Official Capacity Claims

A suit against a state official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office," and is "no different from a suit against the State itself." Will, 491 U.S. at 71. Thus, state officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State. Hutto v. S.C. Retirement

Sys., 773 F.3d 536, 549 (4th Cir. 2014); see Mt. Healthy City Sch. Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977) (whether an officer is deemed a "state official" depends at least in part on state law). However, a state official in his or her official capacity, when sued for injunctive relief, would be a "person" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 n. 10 (quoting Graham, 473 U.S. at 167, n. 14); see Ex Parte Young, 209 U.S. 123, 159-60 (1908) (exception to sovereign immunity allows a federal court to hear a lawsuit seeking prospective relief against state officials).

Plaintiff asserts his claims against Defendants in their individual and official capacities.[3] However, the official capacity claims against Defendants are duplicative of the claims against the NC DPS, and are barred for the reasons set forth in Section (1)(a), *supra*. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (§ 1983 claim against school superintendent in his official capacity was essentially a claim against the school board and was properly dismissed as duplicative). To the extent that Plaintiff requests prospective injunctive relief, this claim is moot for the reasons set forth in Section (II), *supra*. Therefore, Plaintiff's official capacity claims are dismissed.

### c) Supervisors

For a supervisor to be personally liable, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Graham, 473 U.S. at 166. A supervisor can also be liable under a theory of supervisory liability when: (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive

---

[3] A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). Plaintiff's allegations against the Defendants in their individual and supervisory capacities will be discussed separately.

practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted); see King, 825 F.3d at 223–24.

With regards to the October 25 lunch line incident, Plaintiff alleges that Defendant Taylor was made aware of his officers' and staff's misconduct but failed to stop it and told Plaintiff to stay out of the situation. Taylor was involved in the retaliatory January 17, 2016, search of Plaintiff's cell during which property and food were destroyed. Defendant Taylor was made aware of his officers' and staff's continued misconduct but failed to step in and stop the abuse and violations.

Plaintiff alleges that he informed Defendant Pittman about the October 25 lunch incident at dinnertime that same day. Defendant Pittman told Plaintiff he did not believe the officers' actions, would not consider inmate witnesses' statements, and refused to investigate or stop the officers' continuous abuse and retaliation.

Plaintiff alleges that he spoke to Defendant Watson, explained the October 25 incident, and provided him with copies of witness statements who could verify the chain of events. Defendant Watson refused to investigate Plaintiff's allegations regarding the October 25 incident, helped protect officers and sweep the matter under the rug and did nothing to stop the officers' actions.

With regards to the May 13 mattress incident, Plaintiff alleges that Lieutenant Quintero was made aware of the situation but failed to help resolve the problem, causing Plaintiff to have to sleep on blankets and a bare bed frame for one night.

Plaintiff has stated a facially sufficient claim against supervisory Defendants Taylor, Pittman, and Watson by alleging that they were either personally involved in the violations or knew of their officers' and staff's actions and failed to stop them. See Section (2)(a), *infra.*

However, he has failed to state a claim against Defendant Quintero because the conduct that Quintero allegedly failed to correct was not sufficiently serious to implicate Plaintiff's constitutional rights. See Section (2)(b), *infra*.

Therefore, Plaintiff's supervisory claims against Defendants **Taylor, Pittman**, and **Watson** may proceed but the supervisory claim against Defendant Quintero is dismissed.

**(2) Deliberate Indifference**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8.

An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at

837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

   a) **Serious Medical Need**

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that Defendants Clark, Porshia, and Hensley knew of his latex allergy and allowed him to be exposed to latex on the lunch serving line on October 25. When he complained about the latex exposure, which was causing an allergic reaction on his arms and neck, Defendant Clark told Plaintiff to fill out a grievance if he died. On November 22, Defendants Porshia and Hensley allegedly wore latex gloves when they searched Plaintiff while knowing of his latex allergy. Defendant D'Amico, who is a physician's assistant, disregarded Plaintiff's prior diagnosis of a latex allergy and tried to test the allergy for himself, which he was not qualified to do, by taping latex to Plaintiff's skin for hours. Plaintiff had to call a medical emergency because of the test which resulted in pain, injury, and scarring.

The Court will assume for purposes of this discussion that the alleged latex allergy is a serious medical need. See, e.g., Mutschler v. SCI Albion CHCA Health Care, 445 Fed. Appx. 617 (3d Cir. 2011) (unpublished) (it was undisputed that the complaint adequately alleged that the plaintiff's latex allergy was serious, as he had allegedly suffered pain, blisters, and scarring).

Liberally construing the Complaint, Plaintiff has stated a plausible deliberate indifference claim against Defendants **Clark, Porshia, Hensley,** and **D'Amico** for exposing him to latex despite knowing of his medically documented latex allergy.

b) **Conditions of Confinement**

To make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993).

Plaintiff contends that Defendant Tate failed to supply a non-plastic mattress for him to sleep on upon his return to Avery-Mitchell C.I., and Defendant Quintero was informed of the situation yet failed to help find a mattress that night. Plaintiff was provided blankets and had the choice of sleeping on the floor or on the bare metal bed. He chose to sleep on the metal bed and experienced pain in his back and arms for several days as a result.

These allegations are insufficient to set fort a deliberate indifference claim against Defendants Tate and Quintero. Defendant Tate demonstrated some concern for Plaintiff's situation by reporting it to Defendant Quintero and, when no mattress could be located, Plaintiff was provided with blankets. The situation was apparently remedied the following day. Defendants' failure to provide Plaintiff with a non-plastic mattress for a single night is not sufficiently serious to rise to the level of an Eighth Amendment violation, and Plaintiff has failed to allege that either

13

of these Defendants subjectively knew that their actions subjected Plaintiff to a substantial risk of serious harm. See generally Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (conditions that are "restrictive and even harsh… are part of the penalty that criminal offenders pay for their offenses against society."); see, e.g., Crowe v. Leeke, 540 F.2d 740 (4th Cir. 1976) (affirming dismissal of complaint because allegation that cell was so small that only two inmates could sleep in beds, forcing the third to sleep on the floor, failed to state an Eighth Amendment violation).

Therefore, Plaintiff's Eighth Amendment claims against Defendants Tate and Quintero are dismissed.

### (3) Due Process

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

### a) Property

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v.

Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. <u>Gallimore v. Sink</u>, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; <u>see</u> <u>Wilkins v. Whitaker</u>, 714 F.2d 4, 6 (4th Cir. 1983) (due process is satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff contends that Defendants Geouge, Taylor, and Bailey took or destroyed property and food while they searched his cell. They did not fill out a property form noting the disposition of his property or conduct a proper inventory.

Plaintiff appears to allege that his property loss resulted from a random, unauthorized action rather than an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. <u>See, e.g.</u>, <u>Smith v. Ledford</u>, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), *aff'd,* 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion).

Therefore, Plaintiff's property due process claims against Defendants Geouge, Taylor, and Bailey will be dismissed.

    b) **Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any [grievance] procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A prisoner's "access to and participation in the prison's grievance process are not constitutionally protected…." Taylor v. Lang, 483 Fed. Appx. 855, 857 (4th Cir. 2012). "[N]or is there a fundamental right requiring prison administrators [to] investigate prisoner complaints." Mitchell v. Murray, 856 F.Supp. 289, 294 (E.D. Va. 1994).

Plaintiff contends that Defendants Penland and Geouge failed to adequately and truthfully investigate his grievances and complaints, and that Defendant Geouge used deceptive tactics to hide the truth.

These allegations fail to state a cognizable claim for relief because Plaintiff had no right to participate in the grievance process or to have his claims investigated. Therefore, Plaintiff's grievance due process claims against Defendants Penland and Geouge will be dismissed.

**(4) Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To succeed on a retaliation claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams, 40 F.3d at 75. Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civ. Liberties Union of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (plaintiff must show that action would

16

not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir. 1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

Plaintiff alleges that Defendants Porshia and Hensley ignored Plaintiff's serious latex allergy on the lunch line after Plaintiff showed them the outbreak on his body and a medical card, and later retaliated by searching Plaintiff while wearing latex gloves. Defendants Geouge, Taylor, and Bailey continued the retaliation on January 17, 2016, by taking and destroying property and food while searching Plaintiff's cell.

Liberally construing the Complaint, it appears that Plaintiff may be arguing that Defendants **Porshia, Hensley, Geouge, Taylor,** and **Bailey** intentionally exposed Plaintiff to latex, to which he is allergic, in retaliation for exercising his First Amendment right to object to the various Defendants' actions. This claim is minimally sufficient to pass initial review.

**(5) Discrimination**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison

17

v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993); see Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974) (granting summary judgment because "[a] claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

Plaintiff alleges that Officers Clark, Porshia, and Hensley discriminated against him concerning his allergic reaction to latex on October 25, that he was discriminated against on May 13, 2016, when he was deprived of bedding. Further, the facility and its staff have a history of discrimination against African American inmates with brutality and cruel and unusual punishment. Inmates of color are harassed with hostile abusive verbal or physical conduct more often than white inmates. Officers' behavior and their aggression towards blacks should be viewed as hate crimes, criminal charges should be filed.

Plaintiff's vague and conclusory allegations fail to connect the various Defendants' actions with his race or any disparate treatment with similarly situated inmates of another race. See, e.g., Caballero v. Boney, 2018 WL 2292764 (W.D.N.C. May 18, 2018) (conclusory allegations of racial discrimination are insufficient to state a claim under § 1983). Moreover, the relief Plaintiff seeks on this claim, the institution of criminal charges, is unavailable in a § 1983 action. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("in American jurisprudence …, a private citizen lacks a

18

judicially cognizable interest in the prosecution or nonprosecution of another."); Harris v. Salley, 339 Fed. Appx. 281 (4th Cir. 2009) (prisoner lacked equal protection right to have criminal proceedings instituted against § 1983 defendants).

Therefore, Plaintiff's discrimination claim is dismissed.

## V.     CONCLUSION

For the reasons stated herein, the Complaint is sufficient to proceed against Defendants **Clark, Bailey, D'Amico, Geouge, Hensley, Pittman, Porshia, Taylor,** and **Watson**, in their individual capacities as set forth in this Order. However, the remainder of the claims are dismissed pursuant to 28 U.S.C. § 1915(a)(2)(e)(ii) and (iii). The Motion for Preliminary Injunction that is incorporated in the Complaint will be dismissed as moot. Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to cure the deficiencies identified in this Order. Plaintiff is reminded that, despite his *pro se* status, he must comply with all applicable procedures and rules including the Federal Rules of Civil Procedure and the Court's Local Rules. His attention is particularly drawn to Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a "short and plain" statement of the claim. Any Amended Complaint will supersede the original Complaint and therefore any Defendants or claims not contained in the Amended Complaint will be waived. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

**IT IS, THEREFORE, ORDERED** that:

1. The individual capacity claims against Defendants Clark, Bailey, D'Amico, Geouge, Hensley, Pittman, Porshia, Taylor, and Watson, survive initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(a)(2)(e)(ii) and (iii).

3. The Motion for a Preliminary Injunction that is incorporated in the Complaint is **DENIED** as moot.

4. Plaintiff shall have **14 days** in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

5. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), this Order, and a new Section 1983 complaint form to Plaintiff at his address of record as well as at the Alexander C.I.

6. **IT IS FURTHER ORDERED THAT** the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Clark, Bailey, D'Amico, Geouge, Hensley, Pittman, Porshia, Taylor,** and **Watson**, who are current or former employees of NC DPS.

Signed: June 14, 2018

Frank D. Whitney
Chief United States District Judge