**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:17-cv-174-FDW**

| | | |
|---|---|---|
| **KENNETH ANTHONY BATTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF** | ) | |
| **PUBLIC SAFETY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

  **THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 14), and on Plaintiff's "Emergency Preliminary Injunction and Restraining Order," (Doc. No. 20). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 9). The Amended Complaint is the operative pleading.[1]

## I.  BACKGROUND

  *Pro se* incarcerated Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to incidents surrounding his latex allergy that allegedly occurred at the Avery-Mitchell Correctional Institution.[2] The Complaint passed initial review for deliberate indifference against Defendants Clark, Porshia, Hensley, and D'Amico for exposing him to latex despite knowing of his medically documented latex allergy, against Defendants Porshia, Hensley, Geouge, Taylor, and Bailey for retaliation, and against supervisors Taylor, Pittman, and Watson for being either personally involved in the violations or for knowing of their officers' and staff's actions and failing

---

[1] Defendants Geouge and Hensley previously sought an extension of time to file an Answer to the "Complaint." See (Doc. Nos. 30, 31). They are cautioned that the Amended Complaint is the operative pleading.

[2] Plaintiff currently resides at the Johnston Correctional Institution.

1

to stop them.

Plaintiffs names the following employees of **Alexander C.I.** as Defendants in the Amended Complaint for incidents that allegedly occurred in 2018 and are ongoing: Assistant Unit Manager **Stephanie A. Hall**, Facility Administrator **Ken Beaver**, Assistant Superintendent of Programs **Mr. Anderson**, Unit Manager **Mr. Crisp**, Provider **Dr. Williams Jones**, Nurse Manager **Ms. Chapman**, Lead Nurse **Mr. Bell**, Investigator **Christopher P. Murry**, Shift Supervisor **Sgt. Waltz**, Shift Officer **Swink**.

He names the following employees of **Albemarle C.I.** as Defendants for incidents that allegedly occurred in 2016: Assistant Superintendent of Programs **William Glick III**, Unit Manager **Michael D. Thompson**, Lead Nurse **S. Litaker**, Facility Provider **Dr. Coble**.

He names the following employees of **Avery-Mitchell C.I.** as Defendants for incidents that allegedly occurred in 2015 and 2016: Shift Supervisor **Sgt. Tate**, Shift Supervisor **Lt. Quintero**, Assistant Superintendent of Programs **Jason Penland**, Assistant Superintendent of Custody **Gregory Taylor**, Assistant Unit Manager **Mark Randall Geouge**, Physician Assistant **Keith D'Amico**, Correctional Officer **Clark**, Correctional Officer **Porshia**, Correctional Officer **Hensley**, Correctional Officer **Bailey**, Correctional Officer **Captain Pittman**, and Correctional Officer **Captain Watson**.

Construing the Amended Compliant liberally and accepting the allegations as true, Plaintiff has suffered from a severe latex allergy since 2014, for which he had a medical "490" card when he arrived at Alexander C.I. (Doc. No. 14 at 15). The allergy precludes Plaintiff from using the plastic/nylon mats or pillows that prisons provide for bedding. Plaintiff has had a doctor's order for cloth-only mattresses and pillows since 2014. Using plastic/nylon mats and pillows causes skin reactions including severe pain, redness, bruising, itching, irritation, cracking, and peeling with

sores.

**Alexander C.I.**

Defendant **Hall**, who is "in authority," failed to follow Dr. Jones' order regarding the severe latex allergy and Plaintiff's need for cloth mattresses and pillows. She had **Dr. Jones** "change or delete any and all of [Plaintiff's] latex treatment and precautions so the facility would not have to purchase cloth mattresses and pillows…." (Doc. No. 14 at 15). This forced Plaintiff to sleep on the plastic/nylon mats and pillows or nothing at all.

Defendant **Beaver**, the facility administrator, was notified by letter about Plaintiff's attempt to get a preliminary injunction and temporary restraining order, that Plaintiff was trying to have his cloth mattresses and pillows returned to him. Plaintiff also made Beaver aware of his staff's intentional interference and indifferent attitude towards Plaintiff's medical issues. After Plaintiff explained the issues to him, Beaver never stepped in to stop his subordinates' conduct that continued to pose a pervasive and unreasonable risk to Plaintiff's health. Beaver sent a response letter to Plaintiff on June 4, 2018, should have stopped the violations but he refused to stop his staff's actions and instructed him to contact medical through the approved methods.

Defendant **Anderson**, is the supervisor of the medical department. He failed to stop Defendants **Bell, Chapman,** and **Jones** from deliberately and continuously interfering with Plaintiff's medical treatment and precautions. Anderson did nothing to stop these practices even after he knew that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury.

Defendant **Crisp** was made aware of Plaintiff's severe latex allergy and his need for cloth mattresses and pillows upon Plaintiff's arrival at the facility. He ignored Plaintiff's medical needs and the seriousness of the allergy.

Defendant **Jones** ignored Plaintiff's prior diagnosis of a latex allergy and the need for cloth mattresses and pillows. He stopped "all treatment and precautions" that were previously prescribed by other physicians. (Doc. No. 14 at 17). On May 30, 2018, Plaintiff had an appointment with Defendant Jones where he reviewed the dermatology reports confirming his latex allergy, Plaintiff's medical notes, and a "490" showing that Plaintiff needs cloth mattresses and pillows. Defendant Jones renewed Plaintiff's "490" for cloth mattresses and pillows. However, later that evening, a nurse informed Plaintiff that Jones changed the "490" at the request of Defendants **Hall** and **Bell**, and removed all information about Plaintiff's latex allergy from his medical "490."

Defendant **Chapman**, as nurse manager, failed to adequately and truthfully investigate the actions of **Bell** and **Jones** by changing and stopping Plaintiff's latex treatment and precautions. She failed to stop her subordinate from intentionally interfering with Plaintiff's latex treatment and failed to inform Defendant Beaver of Defendant Jones' halting of Plaintiff's latex treatment.

Defendant **Bell** personally interfered with the medical treatment that Jones prescribed by having Jones change the medical "490" to remove any latex treatment and the order for cloth mattresses and pillows even though Bell knew of Plaintiff's allergy and the need for cloth mattresses and pillows. Bell continued to refuse to order the cloth mattresses and pillows even after Plaintiff showed him positive skin reactions from having contact with the plastic/nylon mats and pillows.

Defendant **Murray** refused to adequately and truthfully investigate Plaintiff's complaints about his medical needs. Murray's failure to find a clear solution to Plaintiff's medical needs has placed Plaintiff at real and imminent risk of harm or lost life.

Defendant **Waltz** has acted "tyrannical[ly]" by refusing to adhere to any of Plaintiff's doctors' orders with regards to the latex allergy and by ignoring Plaintiff's severe latex allergy and

his need for cloth mattresses and pillows. (Doc. No. 14 at 18).

Defendant **Swink** ignored the severity of Plaintiff's latex allergy by refusing to issue Plaintiff a cloth mattress or pillow.

## Albemarle C.I.

Defendant **Glick**, who is the manager of the Medical Department at Albemarle C.I., failed to stop Lead Nurse **Litaker** from interfering with Plaintiff's medical treatment and precautions concerning his latex allergy. Even after Glick learned the truth about Plaintiff's severe latex allergy, he continued to allow his subordinates to engage in conduct that posed a risk to Plaintiff's future health.

Defendant **Thompson** was made aware of Plaintiff's severe latex allergy when Plaintiff arrived at the facility but he refused to adhere to a doctor's order confirming Plaintiff's latex allergy and refused to use non-latex gloves.

Defendant **Litaker** personally interfered with Plaintiff's medical treatment by giving false information to the grievance investigator and manager over medical concerning Plaintiff's severe latex allergy and the need for an alert bracelet when she reported that Plaintiff is not allergic to latex contrary to his diagnosis by a specialist with having a severe latex allergy.

On November 24, 2016, Defendant **Coble** touched Plaintiff's stomach while wearing latex gloves despite knowing about Plaintiff's severe latex allergy. His actions caused Plaintiff to have a severe skin reaction on his stomach are of pain, redness, and bruising.

## Avery-Mitchell C.I.

Defendants **Tate** and **Quintero**, who are both supervisors, failed to provide Plaintiff with adequate bedding when Plaintiff returned to Avery-Mitchell even though they were aware of Plaintiff's latex allergy and his need for cloth mattresses and pillows. Tate and Quintero were

aware of Plaintiff's return to the facility before his arrival which notified them to be prepared with the proper bedding. They failed to do so and, as a result, Plaintiff was forced to sleep without bedding.

Defendant **Penland** is the manager over the Medical Department at Avery-Mitchell. He failed to stop his staff from intentionally interfering with Plaintiff's latex medical treatment and precautions even after he became aware that his subordinates' conduct.

Defendant **Taylor** intentionally denied or delayed Plaintiff's access to medical care and intentionally interfered with treatment for Plaintiff's severe latex allergy. He was personally involved and ignored Plaintiff's need for help. He was made aware of his officers' misconduct on October 25 and January 16, 2016 in the lunch line but he refused to intervene, telling Plaintiff "that he was told to stay out of the situation." (Doc. No. 14 at 22).

Defendant **Geouge** retaliated against Plaintiff by intentionally exposing Plaintiff to latex while searching his property despite knowing of Plaintiff's latex allergy and by destroying or taking a lot of Plaintiff's food items in retaliation for Plaintiff exercising his First Amendment rights.

Defendant **D'Amico** taped latex to Plaintiff's left arm despite Plaintiff's prior diagnosis with a latex allergy in an attempt to test the allergy for himself, which he is not qualified to do. The latex remained on Plaintiff's skin for hours which eventually caused Plaintiff to call a medical emergency due to pain, injury, and scarring.

Defendant **Clark** ignored Plaintiff's latex allergy and allowed Plaintiff to be exposed to latex on the lunch serving line on October 25. When Plaintiff complained about the latex exposure which was causing an allergic reaction on Plaintiff's arms and neck, Clark told him to "fill out a grievance if [he] died." (Doc. No. 14 at 23).

Officer **Porshia** wore latex gloves on November 22 when he searched Plaintiff in the dining hall despite knowing of Plaintiff's latex allergy. Plaintiff showed Porshia his "490" card and offered him non-latex gloves but he refused and continued to search wearing the latex gloves. On January 17, 2016, Porshia again ignored Plaintiff's allergy and retaliated by destroying food and property while searching Plaintiff's locker.

Defendant **Hensley** allowed Plaintiff to be exposed to latex on the lunch serving line on October 25 despite knowing of Plaintiff's latex allergy. On November 22, Hensley wore latex gloves when he searched Plaintiff in the dining hall. Plaintiff showed Hensley his "490" card showing the allergy and offered him non-latex gloves but he refused and continued to search wearing the latex gloves. On January 17, 2016, Hensley retaliated against Plaintiff by destroying property and food while he searched Plaintiff's locker.

Defendant **Bailey** retaliated against Plaintiff by intentionally exposing Plaintiff to latex on January 17, 2016, for exercising his First Amendment right to object to the various negatives actions he was performing or had performed.

Defendant **Pittman**, as the Officer in Charge, was informed by Plaintiff about the incident with his subordinates **Clark, Hensley** and **Porsha** on October 25, 2016 in the dining hall. Pittman refused to listen, stating that he did not believe the officers' alleged actions. He would not consider inmate witnesses or written statements. He refused to investigate or stop officers' continued abuse and retaliation.

Defendant **Watson** of Internal Affairs at Avery-Mitchell refused to investigate the October 25 incident after Plaintiff informed him about it and provided him with copies of witness statements. He helped to protect these officers by sweeping the matter under the rug and failing to stop their actions.

As injury, Plaintiff alleges that, when he is touched during searches with latex gloves that have caused severe skin reactions with pain, redness, bruising, itching, cracking, and peeling with sores. This also happens when he is made to sleep on plastic/nylon mattresses and pillows.  He then states *verbatim* "Given triamcinolone acetonide ointment USP, 0.1%, I require cloth mattresses and pillows to use as bedding, however Alexander C.I. has refused to order them for me." (Doc. No. 14 at 14).

Plaintiff requests emergency injunctive relief, compensatory damages, punitive damages, and any additional relief the Court deems just, proper, and equitable.

## II.     PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy that is never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008); Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013).  In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987).  To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  Winter, 555 U.S. at 20; Di Biase v. SPX Corp., 872 F.3d 224, 229 (4th Cir. 2017). A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur.  See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

Plaintiff alleges in the Amended Complaint and in his Motion for emergency injunctive relief that latex gloves are being used at his current institution, Johnson C.I., for everything from

cooking and serving food in the dining hall to the medical department, and that he needs cloth mattresses and pillows. He alleges that, without an emergency injunction, he will "surely suffer irreparable harm, which has already [begun] to happen." (Doc. No. 20 at 1).

Plaintiff has failed to establish that he is likely to succeed on the merits. Moreover, his conclusory claim that he is likely to suffer irreparable harm in the absence of preliminary relief is too uncertain to support relief. Therefore, Plaintiff's Motion for Preliminary Injunction incorporated in the Amended Compliant, and the Motion seeking emergency injunctive relief, will be denied.

## III.     INITIAL REVIEW STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the

pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### IV.     DISCUSSION

### (1)     Deliberate Indifference

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second

requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8.

An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

At Alexander C.I., Plaintiff contends that Defendant Jones ignored Plaintiff's previously diagnosis latex allergy and need for cloth bedding,  stopped all treatment and precautions that had been prescribed by other doctors, and removed these restrictions from Plaintiff's "490" card at the

request of Assistant Unit Manager Hall and Lead Nurse Bell, even though Jones had dermatology reports and medical notes confirming Plaintiff's allergy and showing that he needed cloth bedding. Defendant Hall interfered with Dr. Jones' order regarding a severe latex allergy and Plaintiff's need for cloth bedding by having Jones change or delete all latex precautions so that the facility would not have to purchase cloth bedding, which forced Plaintiff to sleep on plastic/nylon or nothing at all. Defendant Bell interfered with the treatment that Dr. Jones had prescribed by having Jones change the medical "490" to remove any latex treatment and order for cloth bedding even though Bell knew of Plaintiff's allergy and need for cloth bedding. Defendant Crisp was aware of Plaintiff's severe latex allergy and need for cloth bedding but ignored Plaintiff's needs. Bell continued to refuse to order Plaintiff cloth bedding even after Plaintiff showed him positive skin reactions from having contact with plastic/nylon bedding. Defendant Waltz refused to adhere to Plaintiff's doctors' orders about his latex allergy and ignored Plaintiff's need for cloth bedding. Defendant Swink ignored the severity of Plaintiff's latex allergy by refusing the issue Plaintiff cloth bedding.

At Albemarle C.I., Defendant Thompson was made aware of Plaintiff's severe latex allergy but refused to adhere to a doctor's order confirming Plaitniff's allergy and refused to use non-latex gloves. Defendant Litaker gave false information to a grievance investigator and manager that Plaintiff does not have a latex allergy or need an alert bracelet, contrary to Plaintiff's diagnosis by a specialist with a severe latex allergy. On November 24, 2016, Defendant Coble touched Plaintiff's stomach with latex gloves despite knowing about Plaintiff's severe latex allergy.

At Avery-Mitchell C.I., Defendants Tate and Quintero failed to provide Plaintiff with cloth bedding even though they knew of Plaintiff's latex allergy and need for cloth bedding and had notice that Plaintiff would be returning to the facility. Defendant Taylor intentionally interfered

with Plaintiff's access to medical treatment and ignored his need for help for his severe latex allergy. Defendant D'Amico taped latex to Plaintiff's arm despite his prior diagnosis of a latex allergy in an attempt to test the allergy, which he is not qualified to do. Defendants Clark and Hensley ignored Plaintiff's allergy and allowed him to be exposed to latex on the lunch serving line on October 25 and, when Plaintiff complained about his allergic reaction, Clark told him to fill out a grievance if he died. Defendants Geouge, Porshia, Hensley, and Bailey intentionally exposed Plaintiff to latex while searching his property.

The Court will assume for purposes of this discussion that the alleged latex allergy is a serious medical need. See, e.g., Mutschler v. SCI Albion CHCA Health Care, 445 Fed. Appx. 617 (3d Cir. 2011) (unpublished) (it was undisputed that the complaint adequately alleged that the plaintiff's latex allergy was serious, as he had allegedly suffered pain, blisters, and scarring).

Liberally construing the allegations, Plaintiff has stated a plausible deliberate indifference claim against Defendants **Bailey, Bell, Clark, Coble, Crisp, D'Amico, Geouge, Hall, Hensley, Jones, Litaker, Porshia, Quintero, Swink, Tate, Taylor, Thompson,** and **Waltz** for exposing him to latex despite knowing of his medically documented latex allergy.

### (2) Due Process

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the

particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." <u>Stone</u>, 855 F.2d at 172.

**(a) <u>Property</u>**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), *overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. <u>Gallimore v. Sink</u>, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; <u>see</u> <u>Wilkins v. Whitaker</u>, 714 F.2d 4, 6 (4th Cir. 1983) (due process is satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff contends that Defendants Geouge, Taylor, and Bailey took or destroyed property and food while they searched his cell.

Plaintiff appears to allege that his property loss resulted from a random, unauthorized action rather than an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. <u>See, e.g.</u>, <u>Smith v. Ledford</u>, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), *aff'd*, 203 Fed. Appx.

484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion).

Therefore, to the extent that Plaintiff attempts to state a due process claim for depriving him of property, it will be dismissed.

**(b) <u>Investigation</u>**

"The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. <u>See</u> <u>generally</u> <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 196 (1989))). Thus, there is no "fundamental right requiring prison administrators [to] investigate prisoner complaints." <u>Mitchell v. Murray</u>, 856 F.Supp. 289, 294 (E.D. Va. 1994); <u>see</u>, <u>e.g.</u>, <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim); <u>Savage v. County of Stafford, Va.</u>, 754 F.Supp.2d 809 (E.D. Va. 2010) (deputy sheriff's alleged failure to document and investigate arrestee's alibi did not violate due process).

Plaintiff alleges that Defendants Chapman, Murray, Pittman, and Watson refused to adequately and truthfully investigate Plaintiff's complaints about various acts of deliberate indifference and retaliation.

Because there is no constitutional right to an investigation, Plaintiff has failed to state a claim for § 1983 relief against these Defendants for failure to investigate, and this claim will be dismissed.

**(3)   <u>Retaliation</u>**

Prison officials may not retaliate against an inmate for exercising a constitutional right. <u>See</u>

15

Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4ᵗʰ Cir.1978). To succeed on a retaliation claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4ᵗʰ Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civ. Liberties Union of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4ᵗʰ Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4ᵗʰ Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5ᵗʰ Cir. 1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8ᵗʰ Cir. 1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4ᵗʰ Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1ˢᵗ Cir. 1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

Plaintiff alleges that, at Avery-Mitchell C.I., Defendants Geouge, Porshia, Hensley, and Bailey intentionally exposed him to latex and destroying his food and property in retaliation for exercising his First Amendment rights. This claim is sufficient to pass initial review.

Therefore, Plaintiff's retaliation claim against Defendants **Bailey, Geouge, Hensley,** and **Porshia** and will be permitted to proceed.

**(4)** **Supervisors**

For a supervisor to be personally liable, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). A supervisor can also be liable under a theory of supervisory liability when: (1) he

16

knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted); see King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016).

At Alexander C.I., Defendant Beaver knew about Plaintiff's attempt to obtain preliminary injunctive relief for the return of his cloth bedding and Plaintiff made him aware of staff's intentional and indifferent attitude toward his medical issues but failed to stop his subordinates' conduct. Defendant Anderson, supervisor of the medical department, failed to stop his subordinates (Bell, Chapman and Jones) from deliberately and continuously interfering with Plaintiff's medical treatment and precautions. Defendant Chapman, as nurse manager, failed to stop her subordinates from intentionally interfering with Plaintiff's latex treatment and failed to inform Beaver that Jones had halted Plaintiff's latex treatment.

At Albemarle C.I., Defendant Glick, who is the manager of the Medical Department, failed to stop Lead Nurse Litaker from interfering with Plaintiff's medical treatment and precautions concerning his latex allergy. Even after Glick learned the truth about Plaintiff's severe latex allergy, he continued to allow his subordinates to engage in conduct that posed a risk to Plaintiff's future health.

At Avery-Mitchell C.I., Defendant Penland, who is the Medical Department manager, failed to stop his staff from intentionally interfering with Plaintiff's latex medical treatment and precautions after he became aware that his subordinates' conduct. Defendant Taylor was made aware of his officers' misconduct on October 25 and January 16, 2016, and refused to intervene, telling Plaintiff that he was told to stay out of the situation. Defendant Pittman, as Officer in

Charge, was informed by Plaintiff about his subordinate's (Clark, Hensley, and Porsha) misconduct on October 25, 2016, in the dining hall. Pittman refused to listen or consider witness statements and said that he did not believe his officers' actions. Defendant Watson of internal affairs helped protect the officers involved in the October 25 incident and failed to stop their actions.

Plaintiff has stated a facially sufficient claim against the foregoing supervisory Defendants by alleging that they were either personally involved in the violations or knew of their officers' and staff's actions and failed to stop them.

Therefore, Plaintiff's supervisory claims against Defendants **Anderson, Beaver, Chapman, Glick, Penland, Pittman, Taylor,** and **Watson** may proceed.

## V.    CONCLUSION

For the reasons stated herein, the Amended Complaint is sufficient to proceed against Defendants **Bailey, Bell, Clark, Coble, Crisp, D'Amico, Geouge, Hall, Hensley, Jones, Litaker, Porshia, Quintero, Swink, Tate, Taylor, Thompson,** and **Waltz** for deliberate indifference to a serious medical need; against Defendants **Bailey, Geouge, Hensley,** and **Porshia** for retaliation; and against supervisors Defendants **Anderson, Beaver, Chapman, Glick, Penland, Pittman, Taylor,** and **Watson** for failing to stop their subordinates' misconduct. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(a)(2)(e)(ii). The Motion for Preliminary Injunction that is incorporated in the Complaint will be denied, as will the separately-filed Motion seeking emergency injunctive relief.

**IT IS, THEREFORE, ORDERED** that:

1.    The Amended Complaint shall proceed against Defendants **Bailey, Bell, Clark, Coble, Crisp, D'Amico, Geouge, Hall, Hensley, Jones, Litaker, Porshia, Quintero, Swink,**

**Tate, Taylor, Thompson,** and **Waltz** for deliberate indifference to a serious medical need; against Defendants **Bailey, Geouge, Hensley,** and **Porshia** for retaliation; and against supervisor Defendants **Anderson, Beaver, Chapman, Glick, Penland, Pittman, Taylor,** and **Watson** for failing to stop their subordinates' misconduct, survives initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(a)(2)(e)(ii).

3. The Motion for a Preliminary Injunction that is incorporated in the Complaint is **DENIED**.

4. Plaintiff's "Emergency Preliminary Injunction and Restraining Order," (Doc. No. 20), is **DENIED**

5. **IT IS FURTHER ORDERED THAT** the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Anderson, Beaver, Bell, Chapman, Coble, Crisp, Glick, Hall, Jones, Litaker, Penland, Quintero, Swink, Tate, Thompson,** and **Waltz,** who are current or former employees of NC DPS.

6. The U.S. Marshal shall use all reasonable efforts to locate and obtain service on Defendant **Taylor**. If the U.S. Marshal is unable to obtain service on Defendant **Taylor**, the U.S. Marshal shall inform the Court of the reasonable attempts to obtain service.

7. The Clerk of Court is respectfully instructed to mail a copy of the Amended Complaint, (Doc. No. 14), the Sealed Notice containing Defendant **Taylor**'s last known address, (Doc. No. 23), and this Order to the U.S. Marshal.

Signed: September 26, 2018

Frank D. Whitney
Chief United States District Judge